IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALVIN BURDEN, IRIC BURDEN,
JOHN BURDEN, and WILLIAM BURDEN,

        Plaintiffs,

v.                                          Civ. No. 04-1082 JH/WDS

CATRON, CATRON & POTTOW, a
professional corporation, and FORREST
S. SMITH,

        Defendants.

AMENDED[1]
MEMORANDUM OPINION AND ORDER

      This matter is before the Court on five dispositive motions filed by the Defendants in this case: *Defendants' Motion for Summary Judgment on the Issue of Statute of Limitations* [Doc. No. 69], *Defendants' Motion for Summary Judgment on the Issue of Duty* [Doc. No. 63], *Defendants' Motion for Summary Judgment Based Upon No Expert Testimony Supporting Breach of Duty* [Doc. No. 65], *Defendants' Motion for Summary Judgment on Damages* [Doc. No. 67], and *Defendants' Motion for Summary Judgment on Punitive and Statutory Exemplary Damages* [Doc. No. 71]. After considering the law, as well as the evidence and the arguments of counsel as presented in their briefs, the Court concludes that the undisputed material facts support the conclusion that Plaintiffs have not met the statute of limitations in this case and that Defendants did not owe a duty to the Plaintiffs.

---

[1] The Court files this Amended Memorandum Opinion and Order to correct typographical errors occurring on pages 6 and 7 of its original Memorandum Opinion and Order. Specifically, the Court inadvertently referred to the Plaintiffs as the Defendants. This Amended Memorandum Opinion and Order corrects those clerical errors in accordance with Rule 60(a) of the Federal Rules of Civil Procedure but contains no substantive change in the Court's ruling.

Accordingly, the first two motions for summary judgment will be granted on their merits. The remaining three motions, which relate to expert testimony on the issue of breach of duty as well as compensatory and punitive damages, will be denied as moot.

## SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court will view the record in the light most favorable to the party opposing summary judgment, in this case the Plaintiffs. *Lanman v. Johnson County, Kansas*, 393 F.3d 1151, 1154-55 (10th Cir. 2004). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). Summary judgment will be granted to a defendant if the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. "Thus, to survive summary judgment the plaintiff has the burden to put forth sufficient evidence to warrant a verdict as a matter of law; a scintilla of evidence will not suffice." *Lanman v. Johnson County, Kansas*, 393 F.3d 1151, 1154-55 (10th Cir. 2004).

> If the defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakenly favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict ....

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986). The central

inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Id*., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.

## **FACTS**

The undisputed material facts in this case are as follows.

Defendant Catron, Catron & Pottow ("Catron") is a law firm located in Santa Fe, New Mexico. Defendant Forrest S. Smith ("Smith") is an attorney with Catron who practices law in the fields of tax and estate planning. Plaintiffs are individuals who are residents of states other than New Mexico.

On January 28, 1997, testator Taylor Stanley, Jr. ("the Testator") executed a will prepared for him by Smith. In that will, the Testator provided for disposition of his estate to various members of his family, including his disabled natural daughter, Fern Evans, and his unadopted stepson, Plaintiff Alvin Burden ("Burden")[2]. The will addressed both the Testator's personal estate, as well as the power of appointment over funds derived from a trust created by the Testator's grandfather, Ethan B. Stanley. Although Ethan B. Stanley had bequested proceeds from the trust to the Testator, the terms of Ethan B. Stanley's will granted to the Testator a limited power of appointment of trust proceeds, providing that only the Testator's own issue could receive funds from the trust. The Testator's January 28, 1997 will provides that if Fern Evans died without issue, both the corpus and

---

[2] Plaintiffs Iric Burden, John Burden, and William Burden are the natural sons of Alvin Burden.

3

accrued income in the trust would go to Alvin Burden, if living, and if not, to his issue. However, this contingent bequest in the Testator's will is invalid because it does not comply with the terms of Ethan B. Stanley's trust. It is undisputed that Alvin Burden is not the Testator's issue, as Burden is not his natural son and the Testator never adopted Burden. Therefore, Burden and his children do not qualify as beneficiaries of the trust.

Soon after the Testator executed the January 28, 1997 will, Smith realized that the Testator's appointment of Alvin Burden and his issue as contingent beneficiaries of the trust was invalid because Alvin Burden was not legal issue of the Testator. On May 7, 1997, Smith met with the Testator and his accountant, Dirk Houtman, at Catron's offices in Santa Fe. Both Smith and Houtman testified at their depositions that at this meeting, Smith and the Testator discussed the fact that his appointment of Burden as a beneficiary of the trust was invalid because Burden was not the Testator's issue, but that the Testator possibly could remedy the problem by legally adopting Burden. Houtman does not recall any further specifics of the conversation. However, Smith further testified that after the May 7 meeting, he researched New Mexico law regarding the adoption of adults and later called the Testator on the telephone, informing him that he could in fact legally adopt Burden as an adult, thereby rendering valid his appointment of Burden as a contingent beneficiary of the trust. According to Smith's testimony, the Testator did not respond or indicate how he intended to proceed. Both Smith and Houtman testified that the Testator appeared to understand their discussion on May 7, 1997, and there is no evidence in the record to the contrary. The Testator never adopted Burden. Further, Plaintiffs admit that the Testator possessed legal testamentary capacity up until the time of his death.

In July of 2003, the Testator instructed Smith to draft a new will, which included increased

cash bequests to the Plaintiffs but no other changes.  Smith complied with his request, but on August 4, 2003, the Testator died from a self-inflicted gunshot wound; he had never executed the new will. Despite that fact, the personal representative of the estate honored the Testator's wishes and Plaintiffs received the increased cash gifts set forth in the 2003 draft will.  However, Burden received no distribution from the Ethan B. Stanley trust, both because Fern Evans was still alive at the time of the Testator's death, and because the trust's administrator determined that the appointment to Burden, who was not issue, was invalid.

On September 24, 2004, Plaintiffs filed their complaint in this matter.  They allege that knowing of the Testator's intent to benefit them in his will, Defendants Smith and Pottow tortiously breached the standard of care for attorneys, thereby committing professional legal malpractice. Complaint at ¶ 8.  In essence, Plaintiffs claim that Smith failed to advise the Testator that his bequest to them from the Ethan B. Stanley trust was invalid, and that if Smith had done so, the Testator would have understood the significance of the problem and would have taken steps to arrange alternate, larger gifts than those already outlined in his will.

## DISCUSSION

This discussion necessarily begins with the question of whether a genuine issue of material fact exists as to whether in 1997 Smith explained to the Testator that his contingent appointment of Plaintiffs under the Ethan B. Stanley trust was invalid, and that the only way to make it valid was for the Testator to legally adopt Alvin Burden.  In this regard, Smith points to his own testimony (Smith's June 21, 2005 Depo., Defendants' Ex. 4), in which he stated that in May of 1997 he met with the Testator and his accountant, Houtman, to discuss the possible application of the generation skipping tax to the Testator's January 28, 1997 will.  *Id.* at p. 8.  In researching that question after

5

the Testator executed the will, Smith realized that Burden was not "issue" and therefore could not take under the Ethan B. Stanley trust. *Id.* at p. 9-11, 16. *See also* Smith's August 30, 2005 Depo., Defendants' Ex. 7, at pp. 16-17. In May of 1997, Smith informed the Testator of that fact, and he believed that the Testator understood what he was explaining. Ex. 4 at p. 62. *See also* Smith's handwritten notes, Defendants' Ex. 5 to Motion for Summary Judgment On the Statute of Limitations. Similarly, Houtman testified that he remembers a discussion at that meeting "that since it was not–since [] Burden was not his son, his issue or–since he was not adopted, that he could not–he couldn't do that power of appointment. And then further I remember that we did discuss about the possibility of [the Testator] adopting [Burden]." Houtman Depo, Defendants' Ex. 6, at p. 7. After the May 1997 meeting with Houtman and the Testator, Smith told the Testator that he wanted to research the adoption issue. Defendants' Ex. 7 at p. 17. He testified that his research revealed that the Testator could adopt Burden, and that he informed the Testator of that fact by telephone. *Id.* at pp. 18-20.

Plaintiffs attempt to create a genuine issue of material fact as to whether Smith fully explained the issue to the Testator not by presenting conflicting evidence, but rather by pointing to weaknesses in Smith and Houtman's testimony which they claim create a credibility question for the jury. For example, Plaintiffs point to Smith's admission that he needed to rely upon his notes to refresh his recollection of his conversations with the Testator, and they point out that while Houtman remembers general topics of discussion, he does not remember the Testator's specific statements and questions at the meeting. Although Smith testified that the contents of his notes (which state that the power of appointment was invalid as to Burden because he was not issue) of the discussion accurately reflect what he explained to the Testator, Plaintiffs point to the fact that the notes themselves do not

6

explicitly state that Smith explained the issue to the Testator.  Plaintiffs also point out that Smith claims to remember parts of the conversation that are not reflected in the notes, such as a discussion with the Testator about the fact that if Fern Evans died without issue, the Ethan B. Stanley trust would return to the Stanley descendants and no one else.  They rely on the fact that Smith failed to write a memo or a letter to the Testator explaining in writing that his appointment of Burden was invalid.  Plaintiffs point out that Smith did not explain to Robert St. John, an attorney making inquiries on their behalf prior to the commencement of this litigation, that Smith had told the Testator that the appointment was invalid unless he adopted Burden.  Finally, Plaintiffs point to the fact that Houtman has known Smith for twenty years, that they have clients in common, and that he has done accounting work with other attorneys at Catron, essentially implying that Houtman has a motive to shade his testimony in Defendants' favor.  Based on the foregoing, Plaintiffs claim that there are fact issues of witness credibility to be weighed by the jury.

     The Court disagrees.  If a moving party that would not have the burden of persuasion at trial files a properly supported motion for summary judgment and shows that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial, and the nonmoving party fails to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial, then entry of summary judgment is mandated.  *Celotex Corp. v. Catret*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Here, Plaintiffs bear the burden of persuasion at trial on the question of whether Smith met his duty to provide the Testator with adequate information for the Testator to make an informed decision regarding the disposition of his estate.  Essentially, Defendants have elected to present evidence to disprove that element of Plaintiffs' case.  Plaintiffs, in turn, have chosen only to challenge the credibility of the Defendants' evidence, in the form of testimony from two eye-

witnesses, disproving that element. However, they have offered the Court no evidence to actually support their case. In other words, Plaintiffs offer a reason to doubt some of Defendants' evidence, but they do not offer any evidence from which a jury could reasonably conclude that Smith did not discuss the validity of the appointment and the possible cure of adoption with the Testator. As explained above, "a scintilla of evidence will not suffice." *Lanman v. Johnson County, Kansas*, 393 F.3d at 1154-55. Instead, the Plaintiffs were obligated to come forward with sufficient evidence as a matter of law. In this case, Plaintiffs have failed to meet their burden. Other federal courts have reached the same conclusion in similar situations. For example, in *Wilson v. Clancy*, 747 F. Supp. 1154, 1158 (D. Md. 1990), the court granted summary judgment in a legal malpractice case where the plaintiff-beneficiary failed to come forward with evidence to contradict the attorney-defendant's testimony that he had advised his client, the testator, of what to do in order to make a provision in his will valid, which the court concluded "is a question of simple fact, not involving inquiry into anyone's state of mind as to motive or intent." The plaintiff came forward with no evidence to contract the attorney's sworn statement; instead, she merely pointed to circumstances that she claimed reflected on his credibility. The court found no genuine issue of material fact, stating "[the attorney-defendant's] credibility is, in a sense, on the line, but this generates no *triable issue* unless plaintiff produces competent evidence that contradicts [the attorney-defendant].") (emphasis in original). Accordingly, the Court concludes that Plaintiffs have failed to create a genuine issue of material fact as to the events of May 7, 1997, as well as Smith's follow-up phone call to the Testator informing him that he could legally adopt Burden.

## I.     STATUTE OF LIMITATIONS

Defendants contend that Plaintiffs have exceeded the four-year statute of limitations for claims

of legal malpractice, set forth in NMSA 1978, § 37-1-4. The four-year limitation on filing a complaint alleging legal malpractice "commences when (1) the client sustains actual injury and (2) the client discovers, or through reasonable diligence should discover, the facts essential to the cause of action." *Sharts v. Natelson*, 118 N.M. 721, 724, 885 P.2d 642, 645 (1994) (footnote omitted); *see also* § 37-1-4. The statute does not begin to run until the client both sustains injury and discovers or should discover the facts underlying the cause of action. *Sharts*, 118 N.M. at 725, 885 P.2d at 646, n. 2; *see also Wiste v. Neff & Co., CPA*, 1998-NMCA-165, ¶ 8, 126 N.M. 232, 967 P.2d 1172 (stating that "each prong must be met individually"). This is not inconsistent with the Supreme Court's opinion in *Jaramillo v. Hood*, 93 N.M. 433, 434 (1979), in which the beneficiary of a will sued the attorney who prepared the will for malpractice. In *Jaramillo*, the court found that while the damage occurred in that particular case when the testatrix died, the cause of action did not accrue until the plaintiff was "in a position to ascertain or discover the harm or damage to her as a result of the alleged defect in the execution of the decedent's will." *Id*. Accordingly, *Jaramillo* does nothing to change the conclusion that both factors must be met before the statute of limitations begins to run.

### A. Actual Injury

As the New Mexico Supreme Court has stated, a party sustains actual injury when the alleged legal malpractice "results in the loss of a right, remedy, or interest, or in the imposition of a liability." *Sharts*, 118 N.M. at 725, 885 P.2d at 646 (internal quotation marks and citation omitted). The court further explained that a client may have suffered harm to his legal interests even though he has not yet ascertained the full extent of the damage, and that even consequential or incidental damages such as attorney's fees are enough to satisfy the requirement. *Id*. The "harm or loss" prong of the test may be satisfied before a court has declared or adjudicated the party's rights, remedies, or interests:

9

"[T]he judicial process does not create liabilities or destroy rights, but only declares what is present through the process of determining the facts and applying the law." *Id*.

In *Brown v. Behles & Davis*, 2004-NMCA-028, 135 N.M. 180, the New Mexico Court of Appeals applied the reasoning of *Sharts* in a malpractice case stemming from a bankruptcy proceeding. In that case, the plaintiff-clients had retained the bankruptcy lawyer-defendants to assist them in filing bankruptcy and avoiding judgment liens on their personal residence. *Id*. at ¶ 2. In 1986, the bankruptcy court granted plaintiffs a discharge from their debts. Eleven years later, in 1997, plaintiffs attempted to refinance their home, only to discover that the liens remained as a cloud on their title. *Id*. at ¶ 3. The plaintiffs hired new attorneys and successfully petitioned the bankruptcy court to remove the liens. *Id.* at ¶ 4. However, one of the lien creditors successfully appealed the matter to the Tenth Circuit Court of Appeals, which reversed the avoidance of the lien in 1999. *Id*. at ¶ 5. Plaintiffs paid off the lien and sued their original attorneys for malpractice. *Id*. at ¶ 6. After analyzing these facts, the New Mexico Court of Appeals concluded that the plaintiffs' injury had occurred not in 1999 when the Tenth Circuit reversed the avoidance of the liens, but rather in 1986, when the defendants had failed to avoid the liens during the original bankruptcy proceeding. The court reasoned that was the time when the plaintiffs lost a "right, remedy or interest"—specifically, the right to avoid liens on their property through the bankruptcy proceeding. *Id*. at ¶ 10-11.

Plaintiffs rely on *Jaramillo v. Hood*, 93 N.M. 433 (1979), described above, in which the court concluded, without any reasoning, that the harm or damage to the plaintiff-beneficiary arose at the time the testatrix died. However, as Defendants correctly point out, in *Jaramillo* there was no indication that the testatrix ever had any reason to know before she died that her will had been negligently prepared. Thus it appears that in *Jaramillo*, the testatrix had no notice and therefore her

own cause of action against her attorney never accrued. That case presented an entirely different scenario than here, where the Testator was informed of the invalid provision in his will six years in advance of his death, along with the method to cure it. The Court can find no reason under the present law and facts why the Plaintiffs should be permitted to extend the statute of limitations for their derivative cause of action when the Testator himself knew of the problem yet failed to remedy it for six years prior to his death.

Applying the reasoning of *Sharts* and *Brown*, the Court concludes that the actual injury to the client, the Testator, occurred on January 28, 1997, the date that he executed his final will containing an invalid contingent bequest to the Burdens. It was as of that date that the Testator lost the legal right to ensure that his estate would be distributed in a manner consistent with his desires as a result of Defendants' alleged negligence. It was also the date that the Testator had incurred needless and possibly wasted attorney's fees, and starting from which he would incur future attorney's fees if he were to retain either Smith or another attorney to rectify Defendants' error. The Plaintiffs should not be placed in a better position than the Testator himself, since it was he who was in the best position to remedy the invalid provision in the will.

**B. Discovery of Facts Essential to the Cause of Action**

The Testator's legal malpractice claim did not accrue until he discovered, or through reasonable diligence should have discovered, the facts essential to his claim against Smith and Pottow. *Sharts*, 118 N.M. at 726. Often, a determination under the discovery rule raises a factual issue, but "where the undisputed facts show that [the client] knew, or should have been aware of the negligent conduct on or before a specific date, the issue may be decided as a matter of law." *Id*. (quoting *Brunacini v. Kavanagh*, 117 N.M. 122, 127 (Ct. App. 1993)). As explained above, the Court finds

11

that as of May 7, 1997, the Testator knew or should have known that, due to Smith's oversight, the provision in his will granting Burden and his issue the contingent appointment of proceeds in the trust was invalid. As of that date, the Testator had the facts essential to his claim against Smith and Pottow. Accordingly, Plaintiffs' claim should have been brought no later than May 7, 2001.

### C.      Continuous Representation Doctrine

Plaintiffs urge this Court to conclude that New Mexico courts likely would adopt the continuous representation doctrine in cases such as this. Under the continuous representation doctrine, which the New Mexico Supreme Court declined to adopt in *Sharts*, 118 N.M. at 726, the running of the statute of limitations is tolled until the attorney's legal representation of the client terminates with respect to the matters that underlie the malpractice action. Since *Sharts*, the New Mexico Court of Appeals has declined to apply the doctrine in accounting malpractice actions. *LaMure v. Peters*, 1996-NMCA-099 ¶¶ 30-31, 122 N.M. 367. Plaintiffs point to nothing in New Mexico jurisprudence that would indicate a change in the New Mexico courts' position on the doctrine, nor do they explain how this case is so different from *Sharts* and *LaMure* that it would justify this Court overlooking those cases. Accordingly, the Court declines to apply the continuous representation doctrine here and concludes that Plaintiffs' claims are untimely.

## II.     EXISTENCE OF A LEGAL DUTY

Defendants argue that they had no duty to the Plaintiffs, who are third-party non-clients, and therefore Plaintiffs have no cognizable claim against them for legal malpractice. In *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 761, 750 P.2d 118, 122 (1988), the New Mexico Supreme Court addressed a lawyer's duty to a non-client, observing generally that "[a] majority of jurisdictions do not hold attorneys liable for professional negligence to third party

12

non-clients.... A duty of care toward non-clients has been found to exist only in those situations where the non-client was an intended beneficiary of the attorney's services, or where it was reasonably foreseeable that negligent service or advice to or on behalf of the client could cause harm to others." (citations omitted). In *Garcia*, the court addressed the attorney's duty to an adverse non-client in the context of litigation. In *Leyba v. Whitley*, 120 N.M. 768, 775 (1995), the New Mexico Supreme Court adopted the following balancing test "for analyzing the duty owed to statutory beneficiaries by an attorney for the personal representative prosecuting a wrongful death claim":

> (1) the extent to which the transaction was intended to benefit the plaintiff;
> (2) the foreseeability of harm to the plaintiff;
> (3) the degree of certainty that the plaintiff suffered injury;
> (4) the closeness of the connection between the defendant's conduct and the injury;
> (5) the policy of preventing future harm; and
> (6) the extent to which the profession would be unduly burdened by a finding of liability.

Because this case presents facts more akin to those in *Leyba* (and does not involve a question of the duty owed by an attorney to an adverse party in litigation, as was the case in *Garcia*), the Court will analyze the *Leyba* factors here.[3]

"'[U]nder the modified multi-factor balancing test, the threshold question is whether the plaintiff is an intended beneficiary of the transaction to which the advice pertained. While the answer to the threshold question does not totally resolve the issue, no further inquiry need be made unless such an intent exists.'" *Id.* (quoting *Trask v. Butler*, 123 Wash.2d 835, 872 P.2d 1080, 1084 (Wash.1994)) (emphasis added). Here, the Court concludes that initially both Smith and the Testator

---

[3] Defendants advocate the application of the *Leyba* balancing test, while Plaintiffs take no position on the issue.

showed an intent to benefit the Plaintiffs by granting them a contingent appointment of the trust proceeds. However, that initial intent was eviscerated after Smith informed the Testator that the appointment was invalid because Burden was not issue and that the Testator could remedy the situation by adopting Burden, and when for a period of six years the Testator failed to take the legal action necessary to make the appointment valid. The undisputed material facts show that instead of carrying out the adoption, in 2003 the Testator chose instead to modify his will to increase the cash bequests to the Plaintiffs. The facts presented to the Court on summary judgment do not show the Testator's intent to benefit the Plaintiffs through the Ethan B. Stanley trust.

Furthermore, most of the other elements of *Leyba* are not satisfied. The element of foreseeability is not met here. Once Smith informed the Testator that his appointment was invalid, the future harm to Plaintiffs was foreseeable only by the Testator; no one else could have predicted with any certainty whether he would adopt Burden, attempt to make some other provision for Plaintiffs in his will, or take no action at all. Furthermore, it remains unclear whether Plaintiffs suffered any injury. From the beginning, their interest in the Ethan B. Stanley trust was contingent upon Fern Evans dying without issue. Only then would the trust proceeds go to any living Plaintiffs and their issue. It remains to be seen how long each of these parties will live, and whether Ms. Evans will have living issue at the time of her death. Therefore, the damage to Plaintiffs is speculative at this time.

Another factor not satisfied here is the closeness of the connection between the Defendants' conduct and the alleged injury. While initially Smith's conduct in drafting a will with an invalid bequest was the source of harm, there were significant intervening events here—the May 7, 1997 meeting, Smith's follow-up phone call, and the Testator's subsequent failure to adopt Burden—which

dramatically mitigated the closeness of that connection. In a much more direct sense, it was the Testator's failure for six years to either carry out the adoption or to make some other significant change to his will which caused the Plaintiffs' harm. Finally, the Court concludes that the legal profession would be unduly burdened by a finding of liability on the facts presented here on summary judgment. While it is undisputed that Smith drafted an invalid provision, it is also undisputed that he informed the Testator of that fact and gave the Testator the information he needed to remedy the problem. Exercising his own free will and personal judgment, the Testator declined to do so, as was his right. In essence, Plaintiffs would have the Court find that Defendants had a duty to make sure that the Testator followed through on Smith's advice and adopted Burden. However, to impose a duty in this situation would essentially be to impose an obligation on counsel to pressure a client to follow a particular course of action as to the disposition of his estate. The Court declines to impose such a duty, which would interfere significantly in the attorney-client relationship and essentially require the attorney to act in the best interest of the beneficiary, not the client-testator.

Accordingly, the Court concludes that the motion for summary judgment on the issue of duty should also be granted. Defendants are entitled to summary judgment both on the grounds of statute of limitations, and on the alternate, independent grounds that they owed Plaintiffs no duty.

**IT IS THEREFORE ORDERED** that *Defendants' Motion for Summary Judgment on the Issue of Statute of Limitations* [Doc. No. 69] is **GRANTED**, and *Defendants' Motion for Summary Judgment on the Issue of Duty* [Doc. No. 63] is **GRANTED**. *Defendants' Motion for Summary Judgment Based Upon No Expert Testimony Supporting Breach of Duty* [Doc. No. 65], *Defendants' Motion for Summary Judgment on Damages* [Doc. No. 67], and *Defendants' Motion for Summary*

*Judgment on Punitive and Statutory Exemplary Damages* [Doc. No. 71] are all **DENIED AS MOOT**.

_____
**UNITED STATES DISTRICT JUDGE**